STATE, Plaintiff, vs. SCHNORENBERG, Defendant.

*June 2—June 20, 1932.*

*Spencer Haven* of Hudson, counsel for State Bar Commissioners, for the plaintiff.

*Henry Lockney* of Waukesha, for the defendant.

PER CURIAM. The case is now before us for final disposition. The referee advises a dismissal of the complaint, but the plaintiff asks a review of the findings as to counts III, IV, V, and VI. These charges, with the findings of the referee, are:

### Count III.

Relates to testimony given by the defendant in a suit brought against him wherein defendant denied the genuineness of his own handwriting and his liability on an account, the correctness of which had been admitted by him several years before the trial.

The referee reports that in 1926, in an action before C. S. Hayden, justice of the peace, the defendant was sworn and shown a letter dated March 26, 1921, on which was written, "Will remit as soon as possible. Schnorenberg;" a letter dated November 19, 1921, at the bottom of which appears, "Will remit as soon as possible. Schnorenberg." Another letter dated September 26, 1921, on which was written, "Gentlemen: Will settle this in the near future. J. H. S." Concerning this the referee says:

"The defendant testified that in his opinion the notations and signatures at the bottom of these three exhibits were not in his handwriting. His testimony in that respect was given under oath and was material to the issue being tried. . . . I find that the defendant at the time of the trial of (that) . . . action believed the memoranda and signatures . . . were not in his handwriting; . . . that the testimony given on the trial is untrue, but I cannot say that the testi-

mony . . . is sufficiently clear and convincing to prove that defendant's testimony was corruptly given. . . . Perhaps the defendant acted unwisely in litigating this small item of $12.22. Close observation of the defendant throughout the disbarment trial convinces the referee that he is strong-headed to the point of stubbornness. . . ."

### Count IV.

Charges that while acting as attorney for one Pauline Canar in an action wherein Otto A. Moser was defendant and August F. Westfahl was garnishee defendant, this defendant received from Westfahl a check payable to the order of Moser for $60.15, which he indorsed, "Otto Moser by J. H. Schnorenberg, Agent." "J. H. Schnorenberg."

As to this count the referee finds:

"That the only claim made against the defendant under this count is that he had no right to indorse the name of Moser on the check . . . as agent; and that he should not have retained the money as long as he did without accounting for it. . . . The defendant, acting as attorney for Pauline Canar, obtained a judgment on cognovit against Otto Moser October 20, 1928, for $484.55. . . . The defendant was attorney for Pauline Canar and not the agent of the defendant. Some time later Moser sued Westfahl to recover the amount of the check and Westfahl paid the $60.15 check to Moser. I find that the defendant held the $60.15 awaiting the outcome of the litigation. The defendant claimed, and rightly so, that Moser had violated his promise to pay the whole amount of the judgment to the defendant, but instead of doing so went to the plaintiff's place and paid her $60.15 less than was due her on the judgment. . . . After garnishee action was begun Moser commenced suit to have the judgment satisfied, basing his claim upon a receipt given to him by Pauline Canar, and the question as to whether Moser should be compelled to pay the balance of the judgment was being litigated. . . . The defendant was provoked on account of Moser's conduct. . . . It is clear that the check was indorsed and cashed without any ulterior motive on the part of the defendant.

After he cashed the check he was instructed by his client to hold the money. He became ill and had practically no knowledge of what occurred . . . until the following March."

### Count V.

The charge set forth in this count arises from defendant's course of procedure in his effort to collect the balance of the judgment described in count IV. He issued an execution, and when the sheriff refused to act until certain fees past due were paid and after the positive refusal of the sheriff to make any levy, defendant made out a notice of sale, causing the same to be published over the sheriff's name, describing the real estate belonging to the said Moser, and continued therewith until enjoined by proceedings in circuit court.

The material portions of the referee's findings on this charge are:

"The defendant caused an execution to be issued and directed the clerk to give it to the sheriff. On October 29, 1928, the defendant prepared a notice of sheriff's sale on execution and sent a copy to the sheriff, a copy to Mr. Moser, and a copy to the printer, and caused three notices of sale to be posted. He added the sheriff's name to the execution in typewriting. He doesn't know that the sheriff did anything about it. He thinks the sheriff did not make a legal levy under the execution. . . . That a proceeding was begun by Moser to enjoin the sale of his land under that execution. . . . That the sheriff took no steps of any kind under the execution or by virtue of the execution. The defendant called him by phone, advising that his client wished immediate action, but the sheriff replied that his office was not doing any business for the defendant for the reason that the latter owed that office some money."

### Count VI.

This charge involves the dispute between defendant and a client over the collection of two items. The finding re-

cites a number of facts unnecessary to repeat here and concludes:

"It appears without dispute that the defendant acted as attorney for Mr. Goetz from 1915 to 1925 or 1926 and handled quite a number of transactions for him and there was no dispute or difference between them in respect to any of those matters." . . . "The delay in paying over this money was an oversight."

In portions of the findings not detailed here the referee has placed before us a picture of the misfortunes which have attended the defendant in recent years and of the illness resulting from an accident suffered by him in 1927. Giving full allowance to the effect which the discomforts and discouragements referred to may have had upon him, still defendant's acts in the particulars set forth in counts III, IV, and V and described in the evidence offered in relation to those counts cannot be overlooked or passed without rebuke, for in proceedings of this character the public interest is the primary question. *State v. Kern*, 203 Wis. 178, 233 N. W. 629. While the results to those with whom he was dealing at the time have not been of a very serious nature, nevertheless the defendant in those instances did show an indifference to consideration of any annoyance or loss he might be causing others by his obstinate course of proceeding. The general observations of the referee above referred to on the subject of defendant's wilfulness are self-explanatory and need not be enlarged upon further than to say his determination to have things go his way regardless of the interests of others in conflict with his appears to have been at the bottom of much of his trouble. When he acted in defiance of the sheriff in the matter of advertising for sale land over which the sheriff refused to exercise his authority, the defendant knew he was going beyond the bounds of usual practices, but he proceeded until halted by an order of the

circuit court. Certainly a lawyer, no matter how displeased he may be by the conduct of others, is not justified in a departure from a line of propriety and fairness in dealing with public officials, clients, and other individuals.

The referee in his report expresses the belief that the defendant possesses the character qualifications necessary to continue in the practice of the law and recommends that the proceedings be dismissed. We are of the opinion that we may accept the referee's recommendations. But as the difficulties arising out of the conduct of defendant in the practice of his profession which have been considered in this trial with reference to counts III, IV, and V were of his own making and ought not occur, we direct that this expression of disapproval be included in the order terminating the proceedings.