IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Thomas G. HETZEL, Attorney at Law.†

Supreme Court

*No. 82–382–D. Submitted on briefs March 29, 1984.— Decided April 24, 1984.*

(Also reported in 346 N.W.2d 782.)

† Motion for reconsideration denied, without costs, May 24, 1984.

For Attorney Thomas G. Hetzel the cause was submitted on the briefs of *Thomas D. Kuehl* and *Alan D. Eisenberg, S.C.,* Milwaukee.

For the Board of Attorneys Professional Responsibility the cause was submitted on the brief of *David L. Walther* and *Walther & Halling,* Milwaukee.

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

Thomas G. Hetzel appeals from the report of the referee concluding that his conduct in several legal matters violated the Code of Professional Responsibility and recommending that his license be suspended for a minimum of one year as discipline for professional misconduct. Hetzel objects to some of the referee's findings, contests the conclusions that his actions constituted unprofessional conduct, and argues that the recommended discipline is too severe. The Board of Attorneys Professional Responsibility cross-appeals from the report, claiming that the referee failed to conclude that Hetzel violated a specific ethical provision in one legal matter, unnecessarily refused to make findings concerning another matter because a proceeding growing out of that matter was pending in federal court, and erred in his conclusion that Hetzel's neglect of a legal matter did not amount to unprofessional conduct. The

board also disagrees with the recommended discipline, arguing that the indefinite suspension of Hetzel's license, with permission to apply for reinstatement after one year, is appropriate to the totality of Hetzel's misconduct.

We accept the findings of the referee, reject only that conclusion concerning Hetzel's neglect of a client's legal matter, and determine that a one-year suspension of Hetzel's license is appropriate discipline in this case. Although the referee did not address the issue, we assess the costs of the disciplinary proceeding against Hetzel.

We review the findings, conclusions and recommendation of the referee, the Hon. John A. Fiorenza, Reserve Judge. In reviewing the facts found by the referee we apply the "clearly erroneous" standard, *Disciplinary Proceedings Against Swartwout,* 116 Wis. 2d 380, 382–383 (1984). As to conclusions of law, however, the court is not bound to accept those made by the referee. *Disciplinary Proceedings Against Norlin,* 104 Wis. 2d 117, 122, 310 N.W.2d 789 (1981).

Hetzel was admitted to practice law in Wisconsin in 1968 and practices in Kenosha. Although this disciplinary action against him was commenced by the board's filing of a complaint on March 1, 1982, several subsequent amendments of the complaint resulted in the matter being determined on a fourth amended complaint filed April 29, 1983. The board alleged nine counts of unprofessional conduct in that complaint, but two of those counts were dismissed with the board's consent. We consider, *seriatim,* the seven remaining counts.

(1) Between 1974 and 1980, Hetzel received payments from a group of persons who had retained him to represent them in a dispute. Those funds were received both as attorney fees and as funds to be placed in a trust account on the clients' behalf. In 1980, two of

the clients asked Hetzel to provide them with an accounting of their funds. The only accounting Hetzel made was in his testimony at a September, 1980, deposition in another matter involving those funds. Because the board had received information concerning a possible ethical violation, staff attended the deposition but did not participate in it.

Following the deposition the board sent Hetzel a written request to submit a full accounting of the funds of the two clients. Hetzel's response was that he had made an accounting at the deposition, a copy of the transcript of which the board had in its possession. Hetzel told the board that he would make a further accounting only if he were paid for his time to do so, and he demanded the sum of $1,000 in advance as such payment. The referee concluded that Hetzel's refusal to render an accounting to his clients and to the board constituted professional misconduct, in violation of SCR 20.04(1), 20.50(2)(c), and 22.07(2) and (3).

The board contends the referee should have concluded that Hetzel's conduct violated SCR 11.05(2), which requires an attorney to maintain trust account records. However, the board did not allege a violation of that rule in its complaint, and the referee made no findings on which to base such conclusion.

Hetzel contends that he did not violate SCR 20.50(2)(c), requiring a lawyer to maintain complete records of all client funds coming into his possession, for the reason that the rule does not specify what form those records are to take. The referee found that his oral "accounting" made at the deposition, accompanied by a ledger sheet attached as an exhibit, was inadequate, and we accept that finding. Consequently, we accept the referee's conclusions as to Hetzel's unprofessional conduct in this matter.

(2) In a 1980 divorce action in which Hetzel represented the husband, following the court's rendition of a memorandum decision granting a divorce and ordering property division, but before entry of the court's judgment, Hetzel and his client met with the opposing party and had the woman sign a stipulation granting her ex-husband one-half of the proceeds of the anticipated sale of the parties' residence. In its memorandum decision the court had awarded the residence to the wife. Prior to the meeting, Hetzel did not consult with the woman's attorney, although he knew that she had been represented by counsel throughout the divorce proceeding. Upon subsequent motion of the woman's attorney, the court held the stipulation signed in Hetzel's office to be a nullity. The referee concluded that Hetzel's failure to consult with an opposing party's attorney before entering into a stipulation for property division, especially one which gave the opposing party less than the court had given her, violated SCR 20.04(1), 20.38(1) and 20.48.

Hetzel claims that he was only a scrivener at the signing of the stipulation. He maintains that he did nothing more than reduce to writing what the parties told him they had independently agreed upon following the court's memorandum decision. On this issue, Hetzel's testimony, as well as that of his client, directly contradicted the testimony of the woman that she had been coerced by her husband to go to Hetzel's office where she was presented with the stipulation to sign.

Hetzel also contends that he was not obliged to consult with the woman's attorney because that attorney-client relationship terminated upon the court's rendering of the memorandum decision. He characterizes the stipulation as a "post-judgment matter." This contention is without merit.

We accept the referee's findings as not clearly erroneous, and we adopt his conclusion as to Hetzel's unprofessional conduct in this matter.

(3) In the course of his representation of a man charged with solicitation for prostitution, Hetzel notified the district attorney that he was going to contact the state's witness. He sent the witness a letter, stating in part,

"Frankly, I do not believe it is in your best interest, or the best interest of your marriage, or in the best interest of your standing in the community to have this entire matter aired. In your case, this entire matter could be emotionally brutal. . . . It is my understanding that the State of Wisconsin is not pressing this case and, if you desire it to be dismissed, the State would be happy to oblige you."

When he wrote the leter, Hetzel knew from the pretrial conference held in the matter that the state intended to go to trial. The referee concluded that Hetzel attempted to influence the testimony of the witness, in violation of SCR 20.38(2), by seeking dismissal of the criminal charge against his client and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4), by advising the witness that the state was not pressing the case.

Hetzel argues that he has the right and obligation to contact witnesses on behalf of his client in a criminal proceeding, that his letter in no way addressed the witness's testimony and, therefore, could not constitute an attempt to influence that testimony, and that he did not misrepresent the state's position in the matter because he "encouraged" the witness to discuss the matter with the prosecutor after she had had an opportunity to discuss it with Hetzel "on a friendly basis." These arguments are without merit, and we adopt the

referee's conclusion concerning Hetzel's ethical violations.

(4) During 1978 and 1979, Hetzel represented a man named Peters in a breach of contract action. At the same time, Hetzel represented Peters's son-in-law, Drake, in a divorce action against Peters's daughter. Peters had advanced a $200 retainer to his daughter's attorney in the divorce matter, and the divorce judgment ordered Drake to pay $200 to the daughter's attorney, which amount was to be deposited into that attorney's trust account and paid over to Peters. When Drake paid $125 to Hetzel pursuant to that judgment, Hetzel deposited it in his trust account, withdrew it and applied it to his fees for services to Peters in the breach of contract action without Peters's consent. In that contract matter, Peters disputed the fees Hetzel was demanding for his services.

We adopt the referee's conclusion that Hetzel's action in withdrawing the funds from the trust account and applying them to his fee for legal services without his client's consent constituted misconduct in violation of SCR 20.04(1), 20.50(1)(b), and 20.50(2)(d). In so concluding, the referee rejected Hetzel's claim that Peters had verbally authorized him to apply Drake's payment to Hetzel's fee for services in the contract action.

(5) The referee refused to make findings concerning Hetzel's December 15, 1979, conviction of the battery of his wife and his conduct during that proceeding for the reason that there was a writ of habeas corpus pending in federal court concerning that conviction. The referee expressed his opinion that the pending matter might affect the outcome of the battery conviction. The board, however, objects to the referee's position, arguing that Hetzel's conduct violated a criminal statute and

involved moral turpitude, thus constituting grounds for discipline, SCR 21.05(1).

The board takes the position that Hetzel's conviction itself is proof of misconduct unless and until the conviction is reversed. It notes that SCR 11.03(1) provides for the summary suspension of an attorney's license upon the court's receipt of satisfactory proof of an attorney's conviction of a serious crime, regardless of the pendency of an appeal. In fact, during the course of this disciplinary proceeding the board sought summary suspension of Hetzel's license based on this battery conviction, but we denied its petition, leaving the matter for determination in this proceeding.

The board also contends that the referee should have made findings concerning Hetzel's conduct in the battery proceeding. At the hearing on his wife's motion to quash a subpoena served on her, Hetzel completed his wife's argument to the court after his wife became ill. The board argues that the pending habeas corpus petition has no bearing on that conduct.

Even if the board's contentions are correct, we refrain from making our own findings and conclusions based upon the record in this matter. Rather than remanding the matter to the referee for such findings and conclusions, it is preferable to dismiss those charges without prejudice, thereby permitting the board to present them in a subsequent disciplinary proceeding should it choose to do so.

(6) In January, 1978, a woman named Lake retained Hetzel to represent her in a claim for personal injuries sustained in an automobile accident in Virginia. Hetzel commenced an action in federal court in Wisconsin, which was dismissed in January, 1980, for lack of personal jurisdiction. In that action, Hetzel failed to respond to the defendant's motion to dismiss, although he

moved to transfer venue of the case on the same day the motion to dismiss was granted. Despite numerous calls from the client to Hetzel's office, Hetzel failed to inform her of the status of her case following dismissal and failed to disclose that information to the board after it had requested information concerning the matter.

The referee concluded that Hetzel did not adequately represent Lake in the action but that such negligent representation, while it might have constituted malpractice, did not constitute professional misconduct under our ethical rules. That conclusion was based on the referee's finding that the client knew she could have made an appointment to meet with Hetzel, but she did not telephone his office specifically to make such an appointment.

We are persuaded by the board's argument that Hetzel's failure to inform his client of the status of her case constituted misconduct, as well as negligence. Lake had a right to be informed of the status of her case, and Hetzel knew that she was interested in that information, for she testified that she telephoned him some ten times between 1981 and 1983 requesting information on the status of her claim. Hetzel never made a status report to her, nor did he advise her of the dismissal of her action or of his failure to recommence an action before the statute of limitations on her claim expired. In fact, Lake did not learn that the action had been dismissed until the hearing held in this disciplinary matter, March 10, 1983, although the case was dismissed in January, 1980, and the statute of limitations expired in August of that year.

We conclude that Hetzel's conduct in this matter constituted neglect of a client's legal matter, in violation of SCR 20.32(3).

(7) In 1980 Hetzel represented a woman on a criminal charge. A friend of his client posted $1,000 bail

on her behalf and assigned his cash bond to Hetzel for application to the client's legal fees. Hetzel subsequently entered into a plea agreement with the prosecutor providing that the prosecutor would recommend a six-month jail term in exchange for a no contest plea on the criminal charge and an agreement to pay $1,000 in restitution.

At the sentencing hearing, an assistant district attorney who had not personally been party to the plea agreement recommended a six-month jail term for Hetzel's client with payment of restitution in the amount of $1,000 but specified that the restitution was to be made with the $1,000 bail. Hetzel told the court that the $1,000 bail had been assigned to him for payment of his fees for representing the client, and he refused to agree to its being applied as restituiton. The court sentenced Hetzel's client to five years in prison on the criminal charge.

The board alleged that Hetzel allowed his personal interests and financial gain to affect his representation of his client and that he acted adversely to his client's interests to further his own personal financial gain. The referee concluded that Hetzel's representation of his client was affected by his own personal and financial interests, in violation of SCR 20.24(1), and represented a failure to seek the lawful objectives of his client through reasonably available means, in violation of SCR 20.35(1)(a).

The issue whether Hetzel acted in the presence of an actual conflict of interest at the sentencing hearing was before the court of appeals, which held that there was such an actual conflict of interest, regardless of the content of the plea agreement. *State v. Franklin,* 111 Wis. 2d 681, 331 N.W.2d 633 (1983). The court said:

". . . By causing the hearing to degenerate into an argument over the use of the bond money, Hetzel sacrificed Franklin's interest in showing the court that a

satisfactory plea agreement had been entered into that would make the victim whole. Franklin also had an interest in the state's enthusiastic support for the six month term; Hetzel's actions compromised any opportunity for this type of wholehearted endorsement. Finally, in actively and continually asserting that the bond money would be used to pay his fees, Hetzel implicitly stated to the court that his client was untrustworthy; he was unwilling to work out another arrangement with her for payment, yet he was asking the state to do so." *Id.*, at 688.

The referee's conclusion as to Hetzel's unprofessional conduct in this matter was premised on this court of appeals' opinion, and we adopt that conclusion. We are unconvinced by Hetzel's claim that his client had no interest in the bond money for the reason that it was not hers but had been deposited by her friend on her behalf.

On the issue of appropriate discipline, Hetzel argues that the recommended minimum discipline of a one-year suspension of his license is extreme because none of his misconduct involved moral turpitude or intentional wrongdoing. Even if this contention were correct, which it is not, a one-year suspension of his license would not, for that reason, be inappropriate to the nature and extent of his misconduct.

The board, for its part, takes the position that Hetzel's misconduct warrants more severe discipline than a one-year suspension. It argues for the imposition of an indefinite suspension, with the opportunity for Hetzel to apply for reinstatement of his license after one year. The board bases its position on its perception of some confusion as to its ability to report to the court on a subsequent petition for reinstatement in terms of the gravity of the offenses originally considered by the court in establishing the term of suspension. It suggests that prior cases imply that a petitioner for reinstatement

may enjoy a presumption of rehabilitation upon the expiration of a specified term of suspension where no evidence of intervening misconduct is present. To illustrate this "confusion," the board cites *Petition of Eisenberg,* 96 Wis. 2d 342, 291 N.W.2d 565 (1980), in which the court rejected the board's recommendation to deny Eisenberg's petition for reinstatement, and *Disciplinary Proceedings Against Hersh,* 108 Wis. 2d 450, 321 N.W.2d 927 (1982), in which the court examined the gravity of the underlying misconduct and denied reinstatement.

Those two cases are not inconsistent. A petitioner for reinstatement has the burden of demonstrating by clear and convincing evidence possession of the requisite moral character to practice law in Wisconsin and that resumption of practice will not be detrimental to the integrity and standing of the bar or the administration of justice or subversive of the public interest. SCR 22.28(6). In addition, a petition for reinstatement must show that the petitioner has a proper understanding of and attitude toward the standards imposed upon members of the bar and that he or she will act in conformity with those standards. SCR 22.28(4)(g). The board is explicitly authorized to investigate the eligibility of the petitioner for reinstatement, SCR 22.28(5), and such investigation will necessarily encompass the petitioner's attitude and understanding of the ethical rules of practice. The extent of that investigation may vary according to the nature of the petitioner's misconduct, but the board may not recommend against reinstatement solely for the reason that it perceives the petitioner's misconduct as of sufficient gravity to warrant a period of suspension longer than that imposed by the court.

Having accepted the referee's findings of fact and having adopted his conclusions as to Hetzel's miscon-

duct, with the exception of that concerning the Lake matter, as to which we conclude that Hetzel's neglect of his client's matter constituted unprofessional conduct, we determine that the referee's recommended minimum discipline is appropriate.

IT IS ORDERED that the license of Thomas G. Hetzel to practice law in Wisconsin is suspended for one year, commencing June 1, 1984.

IT IS FURTHER ORDERED that Thomas G. Hetzel pay to the Board of Attorneys Professional Responsibility within one year of the date of this order the costs of this disciplinary proceeding in the amount of $18,532.80, provided that if the costs are not paid within the time specified, the license of Thomas G. Hetzel to practice law in Wisconsin shall be revoked forthwith.